### A02A1649. HODGES v. PUTZEL ELECTRIC CONTRACTORS, INC.
(580 SE2d 243)

BARNES, Judge.

James Hodges appeals the grant of summary judgment to Putzel Electric Contractors, Inc. on his claim for personal injuries sustained while he operated a "man-lift"[1] provided by Putzel Electric Contractors. He asserts the trial court erred by granting summary judgment because genuine issues of material fact exist regarding whether Putzel Electric's negligence caused his injuries. Thus, according to Hodges, Putzel Electric failed to pierce the allegations of his amended and recast complaint, and the trial court also erred by not considering affidavits about an alleged earlier, similar incident involving the same man-lift.

Initially, Hodges's complaint alleged that Putzel Electric was negligent in allowing him to operate a man-lift which it knew, or should have known, to be dangerous and unsafe. Subsequently, he also filed an amended complaint that expanded on his allegation of Putzel Electric's negligence.

Putzel Electric answered, denying liability, and, after discovery, Putzel Electric moved for summary judgment. The motion asserted that summary judgment was warranted because Hodges could not show that Putzel Electric breached any duty it owed to Hodges, that the man-lift was defective, or that Putzel Electric knew, or should

---

[1] Although not specifically described in the record, a "man-lift" is apparently a self-propelled machine with an attached device or "bucket" that the operator uses to elevate the bucket and reach heights that would ordinarily be too high to reach. The operator controls the movement of the machine and the bucket from controls located in the bucket.

have known, that the man-lift was defective. Putzel Electric supported its motion with Hodges's deposition testimony and with affidavits from Hodges's crew leader and Putzel Electric's superintendent.

The affidavit of Hodges's crew leader, given on his personal knowledge, stated that Hodges's employer had borrowed the man-lift on other occasions and had no notice of any defects with it. He further stated that the man-lift had no defects and that it operated properly at all times.

The affidavit of Putzel Electric's job site superintendent, given on his personal knowledge, stated that Hodges borrowed a man-lift from Putzel Electric, that Hodges stated that he knew how to use the man-lift, and that Putzel Electric had used this particular man-lift for a long time before the date of Hodges's injury and had no notice of any problems with it. He further stated that the man-lift was not defective in any way.

Hodges's deposition testimony stated that he had used this man-lift once or twice before and had no problems with it. He stated that he checked out the operation of the man-lift before using it, and then started driving it. When he approached a ramp, he started to "try to slow up so I could be sure I got down the ramp and it accelerated; it wouldn't stop." The man-lift, which was smaller than the one he usually operated and operated differently, went out of control and fell off the ramp. The other man-lifts stopped when he lifted his hands from the controls, but this one had a brake.

Hodges does not know what was wrong with the man-lift. In fact, he stated that he did not claim that anything was wrong with it, but only that others said that "something must be wrong with that lift because it did the same thing yesterday."

Hodges responded to the motion for summary judgment by filing an amended and recast complaint and by submitting his affidavit, an affidavit from a co-worker, Roy Taylor, and one from Carl George, an employee of Southeast Paper Manufacturing Company, the owner of the job site where the incident occurred. Hodges's amended complaint alleged that Putzel Electric was liable because it allowed him to operate a man-lift which it knew or reasonably should have known was involved in an earlier similar incident. It further alleged that Putzel Electric failed to inspect the man-lift, did not warn him of the earlier incident, did not comply with Southeast Paper Manufacturing's procedures and rules, and did not comply with its safety procedures and practices.

The affidavit from Hodges's co-worker, Taylor, stated that he had personal knowledge of the statements in the affidavit, and that Hodges was injured while operating a man-lift borrowed from Putzel Electric. He further stated that it was his "understanding" that

Hodges was proceeding down an incline when the man-lift accelerated, Hodges lost control, and the man-lift ran off the end of the ramp and turned over. Taylor stated that he "was told" by an employee of Putzel Electric that the man-lift was involved in a similar incident that occurred before Hodges's injury, and that it was his "understanding" that Putzel Electric allowed Hodges to use the man-lift without taking it out of service for inspection or maintenance. He further stated that Putzel Electric allowed Hodges to use the man-lift without warning him of the prior event or tagging or flagging the man-lift to alert him of the prior incident. Taylor's affidavit asserts that Putzel Electric did not comply with the safety procedures and incident reporting rules of Southeast Paper Manufacturing, and then goes on to state his "belief" that Hodges would not have been injured if Putzel Electric had complied with those safety procedures and rules, because Hodges would have been alerted to the risk.

George, the Southeast Paper Manufacturing employee, gave two affidavits. The first stated that he had personal knowledge of the matters set forth and that he was employed by Southeast Paper Manufacturing on the date of Hodges's injury. George stated that he was "aware" that Hodges was injured at Southeast Paper Manufacturing's facility while operating Putzel Electric's man-lift. He then stated that before Hodges's injury, the man-lift was involved in a similar incident, and that "to his knowledge" Putzel Electric did not warn anyone of the earlier incident and did not commence an investigation. George also states that "no written or verbal notice of the prior similar near miss was given by the employees of Putzel Electric" and that "neither the man-lift nor the location" where the earlier incident occurred was tagged or flagged to notify anyone about it. George further stated that, as an employee of Southeast Paper Manufacturing, he was required to comply with the company's safety manual, that employees of independent contractors at the facility were also required to comply with the manual, and that "to his knowledge" Putzel Electric did not comply with the manual. An uncertified page from the manual was attached to his affidavit.

George's second affidavit stated his "understanding" that the two incidents with the man-lift were similar. This affidavit explains the purpose of the safety manual, and explains his "belief" that Hodges's injury would have been avoided if Putzel Electric had complied with the procedures in the safety manual. His affidavit further states that he "learned" of the two incidents with the man-lift from Eddie Howard,[2] who was employed by Putzel Electric both at the time of the incidents and at the time of his statement to George when George

---

[2] No affidavit or deposition from Howard is included in the record on appeal.

returned from vacation approximately seven to ten days after Hodges's injury.

Putzel Electric contended in its response to these assertions that these affidavits were not sufficient to create a genuine issue of material fact for trial because they were "nothing more than vague, self-serving statements and inadmissible hearsay." The trial court apparently agreed, and granted summary judgment to Putzel Electric. This appeal followed.

1. The standards applicable to resolution of motions for summary judgment are announced in *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

> When ruling on a motion for summary judgment, the opposing party should be given the benefit of all reasonable doubt, and the court should construe the evidence and all inferences and conclusions therefrom most favorably toward the party opposing the motion. When reviewing the grant or denial of a motion for summary judgment, this court conducts a de novo review of the law and the evidence.

(Citation omitted.) *Young v. Turner Heritage Homes*, 241 Ga. App. 400, 401 (1) (526 SE2d 82) (1999).

Under our law,

> [t]o prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. OCGA § 9-11-56 (c). A *defendant* may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case. If there is no evidence sufficient to create a genuine issue as to any essential element of plaintiff's claim, that claim tumbles like a house of cards. All of the other disputes of fact are rendered immaterial. See, e.g., *Holiday Inns v. Newton*, 157 Ga. App. 436 (278 SE2d 85) (1981). A defendant who will not bear the burden of proof at trial need not affirmatively disprove the nonmoving party's case; instead, the burden on the moving party may be discharged by pointing out by reference to the affidavits, depositions and other documents in the record that there is an absence of evidence to support the nonmoving party's case. If the moving party discharges this burden, the nonmoving party cannot rest on its plead-

ings, but rather must point to specific evidence giving rise to a triable issue. OCGA § 9-11-56 (e).

*Lau's Corp. v. Haskins*, supra, 261 Ga. at 491. Thus, "summary judgment is appropriate when the court, viewing all the facts and reasonable inferences from those facts in a light most favorable to the non-moving party, concludes that the evidence does not create a triable issue as to each essential element of the case." Id. at 495 (4). In summary judgment proceedings the rules on admissibility of evidence apply, and hearsay has no probative value unless it is part of the res gestae or otherwise admissible. *Strickland v. DeKalb Hosp. Auth.*, 197 Ga. App. 63, 65 (2) (a) (397 SE2d 576) (1990).

2. Giving Hodges the benefit of all reasonable doubt and construing the evidence and all inferences and conclusions therefrom most favorably toward him, the evidence shows that Hodges was injured in an incident on a job site while operating a man-lift. He started to drive the man-lift down an inclined ramp toward a loading dock when, according to Hodges, the man-lift unexpectedly accelerated even though he applied the brake. He lost control of the machine, and it ran off the ramp and turned over. He suffered injuries that left him disabled. We must infer from his testimony that the brakes on the man-lift did not operate properly, and, as a result, the man-lift went out of control, went off the ramp, and turned over causing Hodges's injuries.

This evidence, standing alone, however, is not sufficient to create a genuine issue for trial.

> To state a cause of action for negligence in Georgia, a plaintiff must show (1) a legal duty to conform to a standard of conduct raised by law for the protection of others against unreasonable risks of harm; (2) a breach of this standard; (3) a legally attributable causal connection between the conduct and the resulting injury; and (4) loss or damage from the breach. In other words, negligence consists of exposing someone to whom a duty of care is owed to a foreseeable, unreasonable probability of harm. Foresight requires the ability to anticipate a risk of harm from the conduct in some form. Thus, the legal duty to exercise ordinary care arises from the foreseeable, unreasonable risk of harm from such conduct. Negligence is predicated on what should be anticipated, rather than on what happened, because one is not bound to anticipate or foresee and provide against what is unlikely, remote, slightly probable, or slightly possible. No matter how innocent the plaintiff may be, he is not entitled to recover unless the defendant did something that it should

not have done, or failed to do something that it should have done pursuant to the duty owed to the plaintiff. For these reasons, the mere occurrence of an unfortunate event is not sufficient to authorize an inference of negligence. A plaintiff must come forward with specific facts establishing a breach of duty, as well as the other elements of negligence, and may not rest upon generalized allegations.

(Citations, punctuation and footnotes omitted.) *Davis v. Blockbuster*, 258 Ga. App. 677, 678-679 (1) (575 SE2d 1) (2002).

Here, Hodges's claims are predicated on his allegation that Putzel Electric furnished him with a defective man-lift and did not warn him of the dangers. As Putzel Electric's affidavits state that the man-lift was not defective and deny knowledge of any problems with it, Putzel Electric has met its burden under *Lau's Corp.* Thus, for his case to survive the motion for summary judgment, Hodges must produce evidence contradicting those statements.

3. Hodges's response to the motion, however, was not sufficient to carry his burden under *Lau's Corp.* His deposition testimony that others told him something must be wrong with the man-lift because of the incident the day before is hearsay, and not admissible at summary judgment. *Strickland v. DeKalb Hosp. Auth.*, supra, 197 Ga. App. at 65. As Hodges's testimony does not state who told him this information or when he was told, he has not established that the statements could be admitted as an exception to the hearsay rule.

In the same manner, his reliance on the other affidavits he submitted is also misplaced. While Taylor and George both stated that the information in their affidavits was based on their personal knowledge, examination of the affidavits shows that the crucial portions were not within their personal knowledge. They frequently used the words "aware," "understanding," "told," and "knowledge" in their affidavits. What one is told by others is hearsay, and stating that one is "aware" of something is not the same as stating a fact from one's personal knowledge. Indeed, George's second affidavit makes clear that his information about both incidents was based on hearsay. Further, stating one's knowledge or belief is nothing more than giving one's opinion.

OCGA § 9-11-56 (e) requires that "supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in the evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." An affidavit based upon "the best of his knowledge and belief" is nothing more than the affiant's opinion given without any demonstrated basis

> of knowledge. It is basic that unsworn allegations are not evidence; nor do they rise to that level when accompanied by an affidavit made, not upon personal knowledge, but upon the "best of affiant's knowledge," which is just a variation of our old friend "information and belief." Every item set forth as a fact in such an affidavit may be false, and yet each one may be true to the best of the knowledge and belief of the affiant.

(Citation and punctuation omitted.) *Hassell v. First Nat. Bank of Newton County*, 218 Ga. App. 231, 232-233 (2) (461 SE2d 245) (1995).

Nevertheless, we must examine all the affidavits and determine whether parts of them are actually based on the affiants' personal knowledge rather than hearsay, knowledge, or belief which would make those parts admissible. *Hassell v. First Nat. Bank &c.*, supra, 218 Ga. App. at 233. "If it appears that any portion of the affidavit was not made upon the affiant's personal knowledge, or if it does not affirmatively appear that it was so made, that portion is to be disregarded in considering the affidavit in connection with the motion for summary judgment." *Chandler v. Gately*, 119 Ga. App. 513-514 (1) (a) (167 SE2d 697) (1969). Affidavits that merely repeat hearsay are not based on personal knowledge, have no probative value, and cannot be considered in these proceedings. *Sarantis v. Kroger Co.*, 201 Ga. App. 552, 553 (411 SE2d 758) (1991).

Additionally, as the hearsay statement in George's affidavit, told to him by Howard, was only Howard's recollection of an event that occurred seven to ten days before, the statement is not admissible under the res gestae exception to the hearsay rule. *Sarantis v. Kroger Co.*, supra, 201 Ga. App. at 553. Also, nothing in George's affidavit shows that Howard's statement was based on Howard's personal knowledge, and, moreover, George's affidavit does not contain sufficient information to allow admission of Howard's statements under OCGA § 24-3-33 which allows that "[a]dmissions by an agent or attorney in fact, during the existence and in pursuance of his agency, shall be admissible against the principal." Thus, "[t]he statements of an agent of one company, made in the course of his employment, to the agent of another received in the course of his employment, regarding the business of the two, is admissible pursuant to OCGA §§ 24-3-33 and 10-6-64." *Coffee Butler Svc. v. Sacha*, 208 Ga. App. 4, 6 (430 SE2d 149) (1993). In this instance, nothing shows that Howard's statement was not mere repeated hearsay from others, nothing shows it was made in the course of his employment, and nothing shows that either Howard or George was acting as an agent of their employer when the statement was made. See *Waddington v. Stores Mut. Protective Assn.*, 52 Ga. App. 331 (1) (183 SE 143) (1935) (physi-

cal precedent only). Similarly, the portions of George's affidavit concerning Putzel Electric's obligation under Southeast Paper Manufacturing's procedures and rules are only his conclusions, and as such have no probative value. *Chandler v. Gately*, supra, 119 Ga. App. at 514 (1) (b).

Accordingly, the portions of the affidavit Hodges relies upon to rebut Putzel Electric's motion were not admissible, and, therefore, he has not met his burden of pointing "to specific evidence giving rise to a triable issue." *Lau's Corp. v. Haskins*, supra, 261 Ga. at 491. The trial court did not err by granting summary judgment to Putzel Electric.

*Judgment affirmed. Ruffin, P. J., and Adams, J., concur.*

DECIDED FEBRUARY 24, 2003 —
RECONSIDERATION DENIED MARCH 27, 2003 — 

*Hicks, Massey & Gardner, Frederick V. Massey, Robert M. Gardner, Jr.*, for appellant.

*Finley & Buckley, J. Benjamin Finley, Jonathan E. White, Chad D. Graddy*, for appellee.

